UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| J.G.M.,<br><br>Petitioner,<br><br>v.<br><br>DAVID WESLING,<br>Field Office Director, et al.,<br><br>Respondents. | ) | 2:26-cv-00455-SDN |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

This matter comes before the Court on Petitioner J.G.M.'s Petition for Writ of Habeas Corpus, ECF No. 3, and the accompanying Order to Show Cause, ECF No. 7. Respondents filed a Response, ECF No. 13, and Petitioner filed a Reply, ECF No. 14. For the reasons set forth below, the Petition is **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of El Salvador who entered the United States on or about July 2024, and was designated an unaccompanied child by the Department of Homeland Security. ECF No. 3 at 1 ¶ 1, Exhibit ECF Nos. 3-1 & 3-2. In August 2024, the Administration for Children & Families' Office on Trafficking in Persons designated Petitioner a victim of severe human trafficking. ECF No. 3 at 4 ¶ 4, ECF No. 3-5. Petitioner has a pending Form I-360 petition for Special Immigrant Juvenile Status. *Id.*, ECF No. 3-6. He was released from custody, issued a Notice to Appear, and has resided in Maine, with a known address and pending federal application reflecting that address, ever since. ECF No 3 at 4 ¶¶ 3–4, ECF No. 3-6. On September 23, 2026, at approximately 7:00 a.m.,

a vehicle in which Petitioner was riding as a passenger was stopped by immigration officers on Interstate 295 in Portland, Maine. ECF No. 3 at 4 ¶¶ 5–6, ECF No. 14 at 2. Officers approached the vehicle and requested identification from Petitioner's adult relative by name; they did not initially ask for Petitioner. ECF No. 14 at 2. Only after confirming the relative's identity did officers begin reviewing the identification of the vehicle's other occupants, including Petitioner. *Id.* Petitioner was arrested and transported to the Scarborough ICE facility; a third occupant of the vehicle was released without incident. *Id.*

On September 23, 2026, Petitioner filed his petition, bringing one claim for violation of his Fifth Amendment due process rights (Count One) and one for warrantless arrest under 8 U.S.C. § 1226 (Count Two). ECF No. 3 at 9–10. Among other forms of relief, petitioner asks that the Court order his immediate release. *See id.* at 10–11.

## II. Analysis

Respondents do not contest that Petitioner's detention is governed by 8 U.S.C. § 1226(a), ECF No. 13 at 2, nor do they contest Petitioner's membership in the certified class in *Guerrero Orellana v. Moniz*, No. 25-cv-12664 (D. Mass.), aff'd, Nos. 25-2152, 26-1094, 2026 WL 2352042 (1st Cir. Aug. 13, 2026). ECF No. 13 at 2.

Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Petitioner was arrested on September 23, 2026; the I-200 Warrant Respondents provided is also dated September 23, 2026. ECF No. 13 at 1, Exhibit ECF No. 13-1. The warrant, however, contains no indication of the time it was issued, and Respondents have submitted no evidence that it was issued before, rather than after or concurrently with, Petitioner's arrest. That

evidentiary gap is not merely technical. The undisputed sequence of events—officers requesting Petitioner's relative's identification first and turning to Petitioner and the vehicle's third occupant only after confirming that identification—indicates that Petitioner was not a pre-identified target of the stop, further undermining any inference that a warrant, if issued at all before the encounter, was issued as to him specifically.

There are exceptions to § 1226(a)'s warrant requirement, which courts have recognized are "strictly limited, particularly in the interior-arrest context." *Morelos Valdovinos v. Noem*, 2026 WL 948285, at *5 (D.N.M. Apr. 8, 2026) (collecting cases). Pursuant to § 1357(a)(2), immigration officials may arrest a noncitizen without a warrant:

> . . . who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2). Under § 1357(a)(5), an immigration officer may also make a warrantless arrest:

> (A) for any offense against the United States, if the offense is committed in the officer's or employee's presence, or
> (B) for any felony cognizable under the laws of the United States, if the officer or employee has reasonable grounds to believe that the person to be arrested has committed or is committing such a felony, if the officer or employee is performing duties relating to the enforcement of the immigration laws at the time of the arrest and if there is a likelihood of the person escaping before a warrant can be obtained for his arrest.

8 U.S.C. § 1357(a)(5).

Where the government cannot establish that a warrant was issued before the arrest, the arrest is properly treated as warrantless, and it is lawful as warrantless only if it falls within one of these narrow exceptions. Respondents have shown neither a lawful warrant nor a narrow exception.

Faced with materially indistinguishable circumstances—a same-day I-200 lacking a time stamp and unaccompanied by any evidence establishing sequence—courts have consistently declined to treat such warrants as satisfying § 1226(a). *See Jorge A.-G. v. Bondi*, 2026 WL 444682, at *2 (D. Minn. Feb. 17, 2026) (finding I-200 invalid where it was "dated ... the same day as [petitioner's] arrest, but [was] absent a time-stamp or any explanatory declaration testimony" establishing sequence and ordering petitioner's release); *Lazarte v. Venturella*, 2026 WL 2581945, at *3 (N.D.N.Y. Sept. 1, 2026) (holding the court could not conclude that a "warrant satisfying § 1226(a) existed at the time of that arrest" where the warrant "identifie[d] no time of issuance, and respondents . . . submitted no evidence establishing that the warrant preceded petitioner's arrest) (internal citation omitted); *Petit v. Blanche*, 2026 WL 2858601, at *1 (D. Colo. Sept. 23, 2026) (finding "petitioner was not arrested pursuant to a valid warrant" where I-200 warrant issued same day as arrest lacked information on time issued and record contained no evidence it had been served on the petitioner).

On this record and consistent with other courts on this issue, the Court finds Petitioner was not arrested pursuant to a valid warrant. Where the government has failed to obtain a warrant that satisfies § 1226(a) and has not shown that a statutory exception applies, courts—including this one—have held release is the appropriate remedy. *See Choglio Chafla v. Scott*, 804 F. Supp. 3d 247 (D. Me. 2026) (ordering immediate release where the Government failed to secure a warrant); *see also Morelos Valdovinos*, 2026

WL 948285, at *7 ("[W]hen DHS cannot meet the statute's requirements for a warrantless arrest, continued detention is unlawful and release is the only permissible remedy.").

Moreover, Petitioner's continued detention is also inconsistent with the "Victim-Centered Approach" required by ICE Directive 11005.3, reinstated following the stay of the 2025 Guidance in *Immigration Center for Women and Children v. Noem*. No. 25-cv-09848, 2026 WL 1455004, at *397 (C.D. Cal. May 20, 2026). Under the 2021 Directive, ICE officers, in rendering custody determinations and absent exceptional circumstances "will refrain from taking civil enforcement action against known beneficiaries of victim-based immigration benefits." ICE Directive 11005.3, *Using a Victim-Centered Approach with Noncitizen Crime Victims* (Dec. 2, 2021) at 2, 9 ¶ 5.6. Petitioner holds precisely such a designation, ECF No. 3-5, and Respondents have identified no exceptional circumstance—no national security concern and no articulable risk of harm to any person—that would justify departing from that sound, and moral, policy. Continued detention of a 19-year-old trafficking survivor with strong community ties and no criminal history—compounded by Respondents' own acknowledgment that they lack suitable long-term detention capacity in this District, which would remove Petitioner from the support network and legal team he has relied on since his designation as a trafficking victim—lends additional weight to the conclusion that release is the appropriate remedy.

## III. Conclusion

Accordingly, the Court **GRANTS** the Petitioner's habeas petition and **ORDERS** the Government to release Petition on his own recognizance by **noon on September 25, 2026**. The Court further **ORDERS** that Petitioner receive an individual bond hearing pursuant to 8 U.S.C. § 1226(a)(2) no earlier than 30 days from this Order, unless Petitioner consents otherwise. The Government is **ENJOINED** from denying Petitioner

a bond hearing on the basis that 8 U.S.C. § 1225(b)(2) applies to Petitioner. The Government is further **ENJOINED** from redetaining Petitioner while his bond hearing is pending. The Government is **ORDERED** to file a status report within 45 days of this Order detailing whether the Petitioner has been granted bond, the amount of that bond, and, if denied, the reasons for that denial.

**SO ORDERED.**

Dated this 25th day of September, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**